FILED
2017 Sep-19  PM 03:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL AND MARY ANN MARTIN, | § § § | |
| Plaintiffs, | § § | |
| | § | CASE NO. _____ |
| vs. | § § | |
| | § | Jury Trial Demanded |
| JPMORGAN CHASE BANK, N.A. | § § | |
| Defendant. | § | |

## COMPLAINT

This suit arises out of JPMorgan Chase Bank's ("Chase") failure to properly service the home mortgage of Plaintiffs Michael and Mary Martin and failure to correct those errors when given notice of the same. Michael and Mary Martin state the following as their complaint against Chase.

### PARTIES

1.     Plaintiffs Michael and Mary Ann Martin are adult resident citizens of the State of Alabama, whose principal residence is in Pickens County, Alabama.

2.     Defendant JPMorgan Chase Bank, N.A. is, upon information and belief, a New York corporation, with its principal place of business located in New York, NY.

1

3.     Chase is registered to do business in Alabama, and its registered agent for service of process in Alabama is:

CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

## SUBJECT MATTER JURISDICTION

4.     This Court has subject matter jurisdiction of the Plaintiff's claims arising under federal law pursuant to 28 U.S.C. § 1331.

5.     This Court has subject matter jurisdiction of the Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367.

## VENUE

6.     The Western Division of the Northern District of Alabama is the proper venue for this action pursuant to 28 U.S.C. § 1391.

7.     A substantial part of the events or omissions giving rise to this action occurred within this district and division.

8.     Likewise, the property that is the subject of this action is located within this district and division.

## FACTS AND EVENTS GIVING RISE TO THE PLAINTIFF'S CLAIMS

9.     The Martins have a home mortgage loan, secured by the property located at 1063 2nd Street Northwest, Gordo, Alabama 35466, which originated in or around July 2013.

2

10.     Chase has been the mortgage servicer for the Martins' loan since its inception.

11.     In or around November 2014, the Martins applied for a loan modification.

12.     Chase denied that modification application in December 2014, stating that the Martins did not qualify for a Home Affordable Modification Program (HAMP) loan modification because Chase could not "create a lower or affordable payment without changing the terms of [the Martins'] mortgage loan beyond the program's requirements."  (See, Dec. 4, 2014 Corr. from Chase to Martins attached hereto as "Exhibit A.")

13.     On March 25, 2016, without notice to the Martins, Chase reversed thirteen (13) monthly payments that were previously paid by the Martins between February 2015 and February 2016 and applied to their loan by Chase.

14.     These 13 payments were then placed in a suspense account.

15.     On March 28, 2016, Chase sent the Martins a letter stating that a mortgage modification *should have* been offered in response to their November 2014 request.  (See, March 28, 2016 Corr. from Chase to Martins attached hereto as "Exhibit B.")

16.     The proposed rectification to this error given in the letter was to "**offer** [the Martins] a **new** modification." (emphasis added). (See, Ex. B.)

17.     The Martins were never told that the new modification would involve the reversal of earlier payments because of Chase's error in not offering them a modification in 2014.

18.     The Martins were never required to supply new paperwork for the modification, nor were they placed in an actual trial modification period.

19.     On April 4, 2016, the Martins received a letter stating their "request for a loan modification" was "approved" and enclosing a copy of the modification agreement.  (See, Apr. 4, 2016 Corr. from Chase to the Martins attached hereto as "Exhibit C.")

20.     The letter showed the initial payment contribution for the modification as coming wholly from suspense—representing the payments that had been reversed—but without giving the Martins notice of how the funds ended up in a suspense account.

21.     The April 4 letter went on to state that escrow disbursements that "may have accrued during [the Martins'] trial period" would be spread over a 5-year period, but the Martins had no knowledge of any such accruals because they never consented to any trial modification period.

22.     On April 18, 2016, the Martins signed a loan modification agreement, which had an effective modification date of May 1, 2016.  (See, Loan Modification Agreement attached hereto as "Exhibit D.")

23.     Notably, Michael Martin was not a signatory to the original note or mortgage but was a signatory to the loan modification agreement.

24.     On April 25, 2016, the payments previously reversed and placed in suspense were applied to the Martins' principal balance by Chase, despite the fact that that amount of principal funds was not due from the Martins at the time.

25.     The Martins received an escrow statement on or about April 29, 2016. (See, Escrow Statement attached hereto as "Exhibit E.")

26.     This escrow statement showed a significant drop in the Martins' escrow balance.

27.     This statement did not explain or give the reason the significant drop in balance in their escrow account occurred, but simply showed that their actual amount in escrow dropped from $164.51 in February 2016 to -$1,708.05 in March 2016, the time at which Chase reversed the Martins' payments without their knowledge or consent.

28.     On February 16, 2017, the Martins' attorneys sent a Qualified Written Request ("First QWR") on behalf of the Martins to Chase providing background information, notice of the errors made, and requesting additional information be provided and corrective action taken. (See, First QWR attached hereto as "Exhibit F.")

29.    The First QWR specifically requested any documentation that would support "[Chase's] authority to reverse payments made into the Martins' escrow account."

30.    On March 13, 2017, Chase responded and stated it needed until April 25, 2017 to respond.

31.    On March 30, 2017 Chase sent the undersigned attorneys an initial response to the First QWR.

32.    While the response included a transaction history, servicer notes, and a copy of the note, mortgage, and loan modification, it did not provide any signed documentation by the Martins to allow the reversal of any payments, or any reversal of payments from their escrow account for application elsewhere.

33.    A second QWR ("Second QWR") was sent to Chase on behalf of the Martins by the Martins' attorneys on April 28, 2017.  (See, Second QWR attached hereto as "Exhibit G.")

34.    The Second QWR specifically gave Chase notice that the Martins did not have knowledge of—much less consent to—Chase's intent to reverse their payments or create a deficit in their escrow account.

35.    It further requested all relevant information specific to a trial modification period that Chase referenced in its response to the First QWR.

36.    Chase responded on May 26, 2017 and requested additional time to respond by June 10, 2017.

37.    On June 6, 2017, it once again requested additional time to respond by June 21, 2017.

38.    On June 15, 2017, Chase sent a letter and additional documents responsive to the Second QWR.

39.    While the letter set forth a detailed timeline of how the Martins' loan was modified and the handling of related funds, it maintained that its actions were justified and that no remedial action was needed.

40.    It provided no documentation to prove that the Martins consented to the movement of funds from their escrow account to their principal balance.

41.    It provided no evidence of any trial modification period or agreement.

42.    Prior to their loan modification, the Martins' monthly payment amount was approximately $513.00.

43.    With the additional escrow shortage payment after the loan modification, the Martins' payment amount increased to approximately $535.14.

44.    The monthly amounts demanded by Chase from the Martins has continued to increase and changes almost monthly.

45.    Instead of entering into a loan modification that would lower their monthly payment, the Martins had thirteen (13) months of payments reversed to

make their escrow account delinquent to pay amounts toward their principal balance that were not yet due and owing under their loan.

## COUNT I

46.     Paragraphs 1-45 are incorporated herein by reference as if fully set out verbatim.

47.     The effect of Chase's improper reversal of payments prior to the effective date of the Martins' loan modification was in contravention of 12 CFR § 1024.34 and the lawful modification process as set forth in 12 C.F.R. § 1024.41.

48.     Chase's failure to require new documentation nearly eighteen (18) months after the Martins were denied a modification, reversal of over a year of payments and reapplication without the Martins' consent and prior to their agreement to an unsolicited, new modification offer is a pattern and practice of contravening the proper processes for modifications, the treatment of escrow surpluses, and the improper application of funds to the principal balance that were not due and owing.

WHEREFORE, the Martins demand judgment against Chase for statutory damages, actual damages for both economic and noneconomic injuries (including mental anguish and emotional distress) pursuant to 12 U.S.C. § 2605(f)(1), costs, expenses, and attorneys' fees pursuant to 12 U.S.C. § 2605(f)(3) or as otherwise

allowed by law, and such other and further relief as a jury may award and this Court may deem just and proper.

## COUNT II

49.     Paragraphs 1-48 are incorporated herein by reference as if fully set out verbatim.

50.     On or around February 16, 2017, the Martins, by and through their attorney of record, sent Chase a QWR pursuant to 12 U.S.C. § 2605(e) of RESPA.

51.     In the QWR, the Martins demanded that Chase correct certain errors and provide certain information.

52.     Chase acknowledged receipt of the QWR, but did not make appropriate corrections to the errors or provide the requested information as requested in the QWR.

53.     Chase's failure to rectify the errors or provide the requested information set forth in the Martins' QWR is a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) and is part of a pattern and practice of noncompliance with § 2605.

WHEREFORE, the Martins demand judgment against Chase for statutory and actual damages for both economic and noneconomic injuries (including mental anguish and emotional distress) pursuant to 12 U.S.C. § 2605(f)(1), costs, expenses, and attorneys' fees pursuant to 12 U.S.C. § 2605(f)(3) or as otherwise

allowed by law, and such other and further relief as a jury may award or this Court may deem just and proper.

## COUNT III

54.     Paragraphs 1-53 are incorporated herein by reference as if fully set out verbatim.

55.     On or around April 28, 2017, the Martins, by and through their attorney of record, sent Chase a second QWR pursuant to 12 U.S.C. § 2605(e) of RESPA.

56.     In the second QWR, the Martins provided greater detail of the precise errors in their loan servicing and demanded Chase correct those errors and provide certain additional information not provided in response to the first QWR.

57.     Chase acknowledged receipt of the QWR, but did not make appropriate corrections to the errors or provide the requested information as requested in the QWR.

58.     Chase's failure to rectify the errors or provide the requested information set forth in the Martins' QWR is a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) and is part of a pattern and practice of noncompliance with § 2605.

WHEREFORE, the Martins demand judgment against Chase for statutory and actual damages for both economic and noneconomic injuries (including mental

anguish and emotional distress) pursuant to 12 U.S.C. § 2605(f)(1), costs, expenses, and attorneys' fees pursuant to 12 U.S.C. § 2605(f)(3) or as otherwise allowed by law, and such other and further relief as a jury may award or this Court may deem just and proper.

## COUNT IV

59.     Paragraphs 1-58 are incorporated herein by reference as if fully set out verbatim.

60.     A loan modification is an addition to an existing obligation of a security interest in a consumer's principal dwelling such that it qualifies as a transaction under the Truth in Lending Act (TILA).

61.     By Chase reversing payments prior to the effective date of the Martins' loan modification and prior to their signature on the loan modification, it is impossible that Chase could have provided the required disclosures under 12 C.F.R. § 1026.18.

WHEREFORE, the Martins demand judgment against Chase for statutory damages, actual damages for both economic and noneconomic injuries (including mental anguish and emotional distress) pursuant to 15 U.S.C. § 1640, costs, expenses, and attorneys' fees pursuant to 12 U.S.C. § 1640 or as otherwise allowed by law, and such other and further relief as a jury may award and this Court may deem just and proper.

## COUNT V

62.    Paragraphs 1-61 are incorporated herein by reference as if fully set out verbatim.

63.    The note and mortgage established a contract that was binding on Chase.

64.    Chase breached this contract with the Martins through its incorrect application of payments (and/or reversal thereof) and attempt to portray the Martins as having agreed to a trial modification period when in fact, no such period ever existed.

65.    As a result of said breach, the Martins were and continue to be damaged, such damage including mental anguish and/or emotional distress.

WHEREFORE, the Martins demand judgment against Chase for compensatory damages (including mental anguish and emotional distress), prejudgment interest, court costs, and such other and further relief as a jury may award or this Court may deem just and proper.

## COUNT VI

66.    Paragraphs 1-65 are incorporated herein by reference as if fully set out verbatim.

67.    Chase has held funds from the Martins unjustly by applying funds from the Martins' monthly installment payments to the principal balance of their

loan, causing the Martins to pay larger sums to account for the deficit in their escrow account.

68.    Chase has been unjustly enriched by these actions since the principal balance owed to Chase by the Martins has decreased in excess of what the Martins were contractually obligated to pay.

69.    The Martins made such payments with the belief that they would be properly applied to their loan and not reversed later without their knowledge or consent.

70.    As a result of said conduct, the Martins were and continue to be damaged, such damage including mental anguish.

WHEREFORE, the Martins demand judgment against Chase for compensatory damages, punitive damages, court costs, and such other and further relief as a jury may award and this Court may deem just and proper.

## COUNT VII

71.    Paragraphs 1-70 are incorporated herein by reference as if fully set out verbatim.

72.    Chase included Michael Martin as a signatory to the loan modification agreement.

73.    Michael Martin agreed to become a signatory on the loan, for which he was previously not obligated, based on Chase's representation that the modification would lower the Martins' payment amount.

74.    As a result of Chase's fraudulent inducement, Michael Martin has become obligated on the debt without knowledge of the new obligations arising thereunder.

WHEREFORE, the Martins demand judgment against Chase releasing Michael Martin from the fraudulent contract and for punitive damages, court costs, and such other and further relief as a jury may award and this Court may deem just and proper.

Respectfully submitted,

*/s/ Nicole B. Hampton*
Jane L. Calamusa (CALAJ5640)
Nicole B. Hampton (BOHAN5522)
Attorneys for the Plaintiffs

**Of Counsel:**

ROSEN HARWOOD, P. A.
2200 Jack Warner Pkwy, Ste. 200
P.O. Box 2727
Tuscaloosa, AL 35403
(205) 344-5000
jcalamusa@rosenharwood.com
nhampton@rosenharwood.com

14

**PLAINTIFFS DEMAND TRIAL BY STRUCK JURY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 28.**

Respectfully submitted,

*/s/ Nicole B. Hampton*
Jane L. Calamusa (CALAJ5640)
Nicole B. Hampton (BOHAN5522)
Attorneys for the Plaintiffs

Defendant to be served by certified mail at the address listed below.

**Defendant's Address:**

JPMorgan Chase Bank, N.A.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104